UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN SCHMITT,

    Plaintiff,

v.

BANK OF AMERICA,

    Defendant.
_____/

Case No. 1:24-cv-611

Hon. Hala Y. Jarbou

## **OPINION**

    This case is about Defendant Bank of America, N.A. ("BANA") not returning Plaintiff Kathleen Schmitt's wire transfer of $66,125.41. Acting on fraudulent wire instructions, Plaintiff initiated a wire transfer of $66,125.41 from her Northpointe Bank ("Northpointe") bank account to a third-party BANA account. After the funds were transferred, BANA's wire fraud department called Plaintiff to confirm the wire transfer. She did not confirm it. Plaintiff requested that BANA refund her; BANA explained that Plaintiff's bank, Northpointe, should file a request to return the $66,125.41 from BANA. BANA has not returned the $66,125.41 despite multiple requests from Plaintiff and Northpointe. Consequently, Plaintiff filed this Complaint in Michigan's 9th Circuit Court for the County of Kalamazoo. (ECF No. 1-1.) BANA filed a Notice of Removal under 28 U.S.C. §§ 1332 and 1441. Plaintiff asserts claims of statutory conversion, common law conversion, and unjust enrichment. BANA moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. (ECF No. 8.) For the following reasons, the Court grants BANA's Rule 12(b)(2) motion.

## I. BACKGROUND

Plaintiff's claims arise from a wire transfer.  Plaintiff, a Nevada resident, initiated this wire transfer from her home in Nevada.  (Compl., PageID.7-8.)  Intending to purchase a piece of Nevada property, she requested that her bank, Northpointe, send $66,125.41 to a fraudster who operated a bank account with BANA.  (Compl., PageID.8.)  Northpointe is a Michigan corporation with a registered office in Grand Rapids, Michigan.  (*Id.*)  BANA is a national bank incorporated and headquartered in Charlotte, North Carolina.  (*Id.*)  Plaintiff claims that a fraudster sent her fraudulent wire instructions when Plaintiff attempted to purchase Nevada property.  (*Id.*)  Plaintiff followed the fraudulent instructions and initiated a wire transfer of $66,125.41 from her Northpointe bank account to a newly created New York BANA account.  (*Id.*, PageID.8-9.)

Noticing the significant amount of money involved in the transaction, BANA's wire fraud department called Plaintiff to confirm the transfer.  (*Id.*, PageID.9.)  BANA told Plaintiff that the funds were being transferred to a newly created personal account, not towards purchasing the property.  (*Id.*)  She did not confirm the transfer.  (*Id.*)  According to Plaintiff, BANA subsequently told her: "[BANA] . . . would have Northpointe file a request for the money to be returned to Plaintiff."  (*Id.*)  BANA canceled the transfer but has not returned the funds.  (*Id.*)  Plaintiff alleges that she has sent BANA a request for the funds and Northpointe has sent at least four.  (*Id.*)

As a result of not receiving the $66,125.41, Plaintiff filed this Complaint.  She initially filed in Michigan's 9th Circuit Court for the County of Kalamazoo.  (Notice of Removal, ECF No. 1.)  BANA then removed this action to federal court, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.  (*Id.*)  The Complaint asserts three claims against BANA: statutory conversion, common law conversion, and unjust enrichment.  (Compl., PageID.10-13.)

BANA moves to dismiss the Complaint under Rules 12(b)(2) and 12(b)(6).  BANA first argues that this Court does not have personal jurisdiction over BANA.  (Mem. in Supp. of Def.'s

Mot. to Dismiss, ECF No. 11, PageID.78.) Alternatively, BANA argues New York's adverse claims statute bars Plaintiff's claims, and even if they are not barred, her claims fail as a matter of law. (*Id.*, PageID.82-90.)

Plaintiff filed an opposition brief and asserted that this Court does have personal jurisdiction over BANA. (ECF No. 17, PageID.195.) She argues this Court has general jurisdiction and specific jurisdiction. (*Id.*, PageID.196, 197.)

## II. LEGAL STANDARD

Under Rule 12(b)(2), the defendant may move, before trial, to dismiss the complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citation omitted). If the defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Air Prods. Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).

When the Court is presented with a properly supported 12(b)(2) motion and opposition, "the court has three procedural alternatives." *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 769 (E.D. Mich. Dec. 2013) (citing *Serras*, 875 F.2d at 1214), *aff'd*, 774 F.3d 351 (6th Cir. 2014). First, it may decide the motion just upon the written submissions; second, it may permit discovery in aid of deciding the motion; or third, it may conduct an evidentiary hearing to resolve any apparent factual questions. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020); *Theunissen*, 935 F.2d at 1458. When an evidentiary hearing has not been

3

held, as in this case, the plaintiff's burden is "relatively slight." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548-49 (6th Cir. 2016) (quoting *Air Prods.*, 503 F.3d at 549). "[T]he plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* Nonetheless, the plaintiff must set forth specifics, showing that the court has personal jurisdiction. *GKN Driveline v. Stahl Specialty Co.*, No. 15-cv-14424, 2016 WL 1746012, at *3 (E.D. Mich. May 3, 2016). The Court may dismiss a case under Rule 12(b)(2) if the specific facts alleged as a whole fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003).

### III. ANALYSIS

"Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court. . . ." *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010); *see also Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) ("Without personal jurisdiction 'the court is powerless to proceed to an adjudication.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999))).

**A. Personal Jurisdiction**

Two things must be true for a federal court sitting in diversity to exercise personal jurisdiction over a nonresident defendant. First, the forum state's law must authorize jurisdiction. *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 492 (6th Cir. 2008). Second, that exercise of jurisdiction must comport with the Fourteenth Amendment's Due Process Clause. *Id.*

These analyses often merge into one, but Michigan's long-arm statute requires its own analysis. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 665 (6th Cir. 2023) ("*Green* explained that the analysis under a 'laundry-list' statute 'is akin to a partial solar eclipse, with part of the statute granting jurisdiction within the permissible constitutional scope and part of the statute possibly outside it.'" (quoting *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997))). As the Supreme

4

Court of Michigan explained, "[t]he State of Michigan may exercise . . . personal jurisdiction over [a defendant] if two conditions are met: First, [the defendant]'s conduct must fall within a provision of Michigan's long-arm statutes" and "[s]econd, the exercise of jurisdiction must comport with due process." *Green*, 565 N.W.2d at 817; *see Metry v. Coastal Cmty. Fed. Credit Union*, No. 354372, 2021 WL 4005883, at *2 (Mich. Ct. App. Sept. 2, 2021) (applying both steps of *Green*).

This Court, therefore, has a two-fold inquiry: (1) does Michigan's long-arm statute confer personal jurisdiction, and if so, (2) does the Due Process Clause of the Fourteenth Amendment allow the Court to exercise that jurisdiction? *See Sullivan*, 79 F.4th at 666. If the answer to either question is no, the Court must dismiss Plaintiff's complaint for lack of personal jurisdiction under Rule 12(b)(2). *See Air Prods.*, 503 F.3d at 550.

### 1. Michigan's long-arm statute

Michigan has numerous long-arm statutes. *See* Mich. Comp. Laws §§ 600.701-600.735. Plaintiff asserts jurisdiction under § 600.711, Michigan's general jurisdiction statute for nonresident corporations, and § 600.715, Michigan's limited jurisdiction statute for nonresident corporations. Plaintiff argues that she has established personal jurisdiction under both statutes.

#### a. *General Jurisdiction*

Under Michigan law, the exercise of general jurisdiction for nonresident corporations is permissible in three circumstances. Mich. Comp. Laws § 600.711. Plaintiff argues that she has established general jurisdiction under § 600.711(3). Under that long-arm statute, she must show that BANA's activities in Michigan qualify as "continuous and systematic." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, PageID.109.)

The statutes do not define what constitutes "a continuous and systematic part" of a corporation's general business. However, Michigan courts typically look at several factors. *See*

5

*Glenn v. TPI Petroleum, Inc.*, 854 N.W.2d 509, 515-17 (Mich. Ct. App. 2014).  If the corporation has physical locations, officers, employees, and accounts in Michigan, and it conducts regular business within the state, such contacts generally satisfy § 600.711(3).  *Id.*  That said, the corporation's relationship with Michigan cannot be too attenuated.  "A foreign corporation must actually be present within the forum state on a regular basis . . . to be subjected to general personal jurisdiction."  *Kircos v. Lola Cars Ltd.*, 296 N.W.2d 32, 35 (Mich. 1980).

Here, Plaintiff provides enough facts to show that BANA carries on a continuous and systematic part of its general business within Michigan.  Plaintiff alleges that BANA "maintains bank branches in major [Michigan] cities such as Detroit and Grand Rapids."  (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, PageID.111.)  She further claims that BANA's physical locations in Michigan offer ATMs, tellers, banking specialists, and extended hours.  (*Id.*)  Additionally, BANA provides community involvement by investing in and strengthening local communities.  (*Id.*)  These allegations are exactly what Michigan courts require to show that a corporation is "at home" in Michigan: physical locations, officers, employees, and conducting regular business.  *Cf. Glenn*, 854 N.W.2d at 515-17 (finding lack of general jurisdiction because nonresident corporation did not have a physical location, officers, employees, bank accounts, or a general plan for regular business in Michigan); *ABC Debt Collections, LLC v. Gleason Corp.*, No. 16-14225, 2017 WL 2242362, at *5-6 (E.D. Mich. May 23, 2017) (finding lack of general jurisdiction because nonresident corporation did not have a physical location, officers, employees, or bank accounts in Michigan).  Thus, Plaintiff satisfies Michigan's general jurisdiction long-arm statute for nonresident corporations.

### b. *Limited Jurisdiction*

Plaintiff also argues that she satisfies Michigan's limited personal jurisdiction statute, Mich. Comp. Laws § 600.715.  Under § 600.715(1), Michigan has limited jurisdiction over a

6

nonresident corporation for claims "arising out of the act or acts which create [t]he transaction of any business within the state." Mich. Comp. Laws § 600.715(1). The statute's plain text instructs that Plaintiff must show two prongs. She must show that BANA conducted a transaction of any business within Michigan and that her suit arises out of BANA's actions within Michigan.

These prongs are not onerous. For starters, "the slightest act of business in Michigan" satisfies the first prong. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002); *ABC Debt Collections*, 2017 WL 2242362, at *5-6 (quoting *Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 830 (E.D. Mich. 2000)) (explaining that the transaction of any business standard is "extraordinarily easy" to satisfy). Michigan courts apply the same liberal standard to the second prong: "Michigan courts have liberally construed the long-arm statute's arising-out-of language." *Sullivan*, 79 F.4th at 667. These prongs are so easy to meet that Michigan courts find "[t]he only real limitation . . . is the due process clause." *Viches*, 127 F. Supp. 2d at 830 (internal quotations and citations omitted); *see Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (holding that exchanging correspondence and telephone calls between a nonresident defendant and the plaintiff in Michigan, and sending payments to Michigan, can be enough to satisfy the low standard).

Plaintiff satisfies both prongs. As for the slight act of business prong, Plaintiff provides that BANA operates in Michigan by operating BANA branches and ATMs and staffing those locations with employees. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, PageID.112.) These facts show that BANA conducts "transactions of business" in Michigan. While Plaintiff does not expressly connect how her suit arises out of these transactions, she alleges that her wire transfer originated in Michigan and a Michigan entity experienced the resulting harm. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, PageID.112-113.) These allegations taken together arguably

7

satisfy § 600.715(1)'s low bar. *See Sullivan*, 79 F.4th at 667-68; *Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (2001).

### 2. The Due Process Clause

Unlike Michigan's long-arm statutes, the Due Process Clause of the Fourteenth Amendment is more difficult to satisfy. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012) (finding state long-arm statute satisfied but no personal jurisdiction absent general or specific jurisdiction under Due Process Clause). "The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). To comport with due process, the "non-resident defendant must have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *AlixPartners*, 836 F.3d at 549 (quoting *Walden v. Fiore*, U.S. 571 U.S. 277, 283 (2014)). The minimum contacts standard is much more difficult to meet than Michigan's long-arm statute. *See Viches*, 127 F. Supp. 2d at 830 ("The standard for deciding whether a party has satisfied . . . § 600.715 is extraordinarily easy to meet. 'The only real limitation placed on this statute is the due process clause.'") (quoting *Kiefer v. May*, 208 N.W.2d 539, 541 (Mich. 1973)) (citation omitted).

A plaintiff can satisfy the minimum contacts test of the Due Process Clause in one of two ways. First, general jurisdiction. The Court may exercise general jurisdiction when the activities of the nonresident are substantial, continuous, and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Second, specific jurisdiction. The Court may exercise specific jurisdiction when the nonresident's conduct is connected to the suit before the court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985). Plaintiff argues that this Court has both. The Court disagrees.

8

### a. *General Jurisdiction*

A court may exercise general jurisdiction "when a defendant is 'essentially at home' in the State." *Ford*, 592 U.S. at 352 (citing *Goodyear Dunlop Tires Operations, S.A v. Brown*, 564 U.S. 915, 919 (2011)).  "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotations omitted); *see Gibbs v. Trans Union LLC*, No. 2:21-cv-00667-JDW, 2021 WL 2375898, at *2 (E.D. Pa. June 10, 2021) (citing *Anderjaska v. Bank of Am., N.A.*, No. 1:19-cv-3057-LTS-GWG, 2021 WL 877558, at * 2 (S.D.N.Y. Mar. 9, 2021); *Haring v. Wells Fargo Bank N.A.*, No. C 18-3310 SBA, 2018 WL 10471109, at *4 (N.D. Cal. Oct. 17, 2018)) (finding that a "National Banking Association is only at home in the state where it is based").  But general jurisdiction is not limited to where the corporation is based, "in an 'exceptional case,' a . . . defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'"  *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19); *see Daimler*, 571 U.S. at 137-38 (holding that the exercise of general jurisdiction in every state in which a corporation engages in a substantial, continuous, and systematic course of business is "unacceptably grasping").  It is undisputed that BANA is National Banking Association, and it appears the parties do not dispute that BANA's principal place of business and headquarters is in North Carolina.  (Compl., PageID.8.)  So, Plaintiff's argument lives and dies on this being an "exceptional case."

This is not one of those cases.  Plaintiff argues that BANA is subject to this Court's general jurisdiction because it "maintains bank branches in major [Michigan] cities." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, PageID.111.)  Plaintiff also asserts that general jurisdiction is proper because BANA has physical locations and services like ATMs, extended hours, banking specialists, and tellers. (*Id.*)  Plaintiff lastly supports her argument by averring that BANA offers

mobile and online banking services to Michigan customers and community involvement through investments. (*Id.*) Yet these contacts are not so perpetual as to render BANA essentially at home in Michigan. Without more, operating bank branches, making investments, and providing online banking services is insufficient to subject BANA to general jurisdiction in Michigan. *See, e.g.*, *Daimler*, 571 U.S. at 134-38 (finding no general jurisdiction over a defendant that had a subsidiary with three physical locations in the forum state and that sold 2.4% of defendant's worldwide sales in the forum states); *Tyrrell*, 581 U.S. at 414 (finding that defendant's operation of 2,000 miles of railroad track and presence of over 2,000 employees in forum state did not confer general jurisdiction); *Evan v. Diners Club Int'l, Ltd.*, No. 2:16-cv-178-RL-PRC, 2017 WL 4784667, at *2 (N.D. Ind. Oct. 24, 2017) (finding no support for exercise of general jurisdiction over defendant national bank even if it had active card members, branches, and ATMs in forum state); *Brumfield v. TransUnion, Inc.*, No. 19-13094, 2020 WL 1083598, at *3 (E.D. La. Mar. 6, 2020) (finding no general jurisdiction where nonresident national bank made business and home loans to customers in forum state).

Plus, holding that this is an exceptional case would run contrary to a bedrock general jurisdiction principle. If this Court were to find that BANA is "at home" in Michigan, it would, by extension, imply that BANA is also at home in every other state in which it operates. The Supreme Court of the United States has declined to create such a rule. *See Daimler*, 571 U.S. at 137-38; *Goodyear*, 564 U.S. at 929. For instance, in deciding where a bank is "located" for 28 U.S.C. § 1348 purposes, the Supreme Court of the United States explained: "Were we to hold, as the Court of Appeals did, that a national bank is additionally a citizen of every State in which it has established a branch, the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated

10

entities. Congress, we are satisfied, created no such anomaly." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). The Court does not have general jurisdiction over BANA.

### b. *Specific Jurisdiction*

Plaintiff also asserts that this Court has specific jurisdiction over BANA. Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford*, 592 U.S. at 359. For the Court to exercise specific jurisdiction over a defendant, the defendant must have taken "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This purposeful availment requirement ensures that personal jurisdiction shall not arise "solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (quoting *Hanson*, 357 U.S. at 253). Nor can the "unilateral activity of [the] plaintiff" give rise to personal jurisdiction. *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475). In other words, jurisdiction is proper only where "actions by the defendant himself" establish a connection with the forum. *Burger King*, 471 U.S. at 476.

The Sixth Circuit provides "a three-part test to determine whether the exercise of personal jurisdiction . . . comports with constitutional due process." *AlixPartners*, 836 F.3d at 549. "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* (quoting *Air Prods.*, 503 F.3d at 549). Second, "the claims 'must arise out of or relate to the defendant's contacts' with the forum." *Sullivan*, 79 F.4th at 670 (first quoting *Ford*, 592 U.S. at 358; and then quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)). Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549-50 (quoting *Air Prods.*, 503 F.3d at 550).

The Sixth Circuit has applied this three-part test to similar facts. *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489 (6th Cir. 2008). In *Harris*, the plaintiff sued an English bank in Tennessee for mishandling wire transfers he initiated in Tennessee. *Id.* at 492. He argued that when he wired money to the English bank, the bank mishandled the funds by not following the wire instructions. *Id.* at 491-92. The bank moved to dismiss, arguing that the court did not have personal jurisdiction over it because it did not have sufficient connections to Tennessee. *Id.* In applying its test, the court held that the bank did not purposefully avail itself in Tennessee because the bank did not *initiate* the wire transfers. *Id.* at 495 (citing numerous Sixth Circuit cases). The court did not stop there. It also found that the plaintiff based his claims on the bank's processing of the wire transfer; thus, his claims did not "arise from" any actions by the bank within Tennessee. *Id.*

BANA hinges its Rule 12(b)(2) defense on Plaintiff not satisfying the second and third elements under the Sixth Circuit's test. As for the second element, it argues: "Even though BANA conducts business in Michigan, there is no connection between BANA's general activities in Michigan and the specific facts of this case." (Mem. in Supp. of Def.'s Mot. to Dismiss, PageID.82.) And for the third element: "[T]he consequences allegedly caused by BANA to Plaintiff in Nevada do not have a substantial enough connection with Michigan to make the exercise of jurisdiction over BANA reasonable." (*Id.*)

The Court finds that Plaintiff has not established the second element. Like the plaintiff in *Harris*, Plaintiff's claims arise from BANA processing the wire transfer. (*See* Compl., PageID.8-10, 13.) Her claims do not arise from the conduct she alleges BANA performs in Michigan: operating physical locations, ATMs and employing staff to manage those locations. Her claims instead arise from BANA merely processing a wire transfer from Michigan, which in

of itself is insufficient to establish specific jurisdiction in Michigan. *See, e.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433-34 (5th Cir. 2014) (finding wire transfers initiated by plaintiff and merely facilitated by defendant bank is not sufficient to create specific jurisdiction). Moreover, Plaintiff has not pled sufficient facts to show that BANA's processing of the wire transfer even occurred in Michigan. The facts instead show that BANA processed the wire to the third-party fraudster's New York account. (Mandy Teveny Aff. ¶¶ 8-10, ECF No. 11-1.)[1] Last, Plaintiff is not even a Michigan resident. (Compl., PageID.7.) She currently resides in Nevada and initiated this transfer from Nevada to purchase Nevada property. (*Id.*, PageID.8.) Her only connection to Michigan is her bank, Northpointe. (*Id.*) Consequently, the wire transfer at issue here does not confer specific jurisdiction over BANA.

The Court reiterates its concern that holding otherwise would open national banks to jurisdiction in all fifty states for facilitating and processing wire transfers. This Court is not alone; the Supreme Court of the United States and other lower courts share the same concern. *Daimler*, 571 U.S. at 137-38 (holding jurisdiction in every state would be "unacceptably grasping"); *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 214 (3d Cir. 1984) (holding that wire transfers that originated in the forum state create no expectation of submission to forum state court jurisdiction); *St. Paul Travelers Cas. & Sur. Co. of Am. v. Guar. Bank Tr. Co.*, No. CIV-05-CV-000968REB BNB, 2006 WL 1897173, at *3 (D. Colo. July 10, 2006) (finding that "mere acceptance of wire fund transfers" should not commit a bank to national jurisdiction); *Resol. Tr. Corp. v. First of Am. Bank*, 796 F. Supp. 1333, 1335-36 (C.D. Cal. 1992) (comparing wire transfers to the placement of a product into the stream of commerce); *Plymouth Cap. Ltd. v. Three S Farms,*

---

[1] The Court may decide this motion based on affidavits. *See Serras*, 875 F.2d at 1214 ("[T]he court may determine the [Rule 12(b)(2)] motion on the basis of affidavits.").

*Inc.*, No. 97-C-7740, 1998 WL 242154, at *3 (N.D. Ill. May 6, 1998) (explaining that "[f]inding jurisdiction appropriate because a bank accepted wire transfers from a company or bank in another state would potentially subject it to jurisdiction in every state" and would "offend traditional notions of fair play and substantial justice"); *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 648 (D.S.C. 2005), *aff'd sub nom. Dtex LLC v. BBVA Bancomer*, 214 F. App'x 286 (4th Cir. 2007).

The Court finds Plaintiff's other argument unavailing. Plaintiff cites *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), a distinguishable case for support. *Neogen* held that a defendant can purposefully avail itself in a state by "maintaining an interactive website." *Id.* at 890. It deemed the defendant's website interactive because it gave users in the forum state passwords to access the defendant's services. *Id.* The court also explained that a nonresident corporation avails itself in a forum state by mailing test results and accepting payment from customers with forum state addresses. *Id.* at 892. But here, Plaintiff did not use BANA's website passwords to wire money, instead she used Northpointe services. Because Plaintiff did not use BANA passwords or a BANA website in initiating the transfer, *Neogen* does not apply.

In sum, the Court lacks personal jurisdiction over BANA. Even though Plaintiff's allegations could satisfy Michigan's long-arm statute, Plaintiff does not satisfy the Due Process Clause of the Fourteenth Amendment. The Court will dismiss Plaintiff's complaint under Rule 12(b)(2) for lack of personal jurisdiction.

## IV. CONCLUSION

For these reasons, the Court will grant Defendant's motion and dismiss the complaint for lack of personal jurisdiction.

Dated: November 26, 2024             /s/ Hala Y. Jarbou
                                     HALA Y. JARBOU
                                     CHIEF UNITED STATES DISTRICT JUDGE